IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | | |
|---|---|---|
| KELLIE WATSON, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO.: |
| | ) | |
| V. | ) | PLAINTIFF DEMANDS TRIAL |
| | ) | BY STRUCK JURY |
| ROLLING FRITO-LAY SALES, L.P., | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

## COMPLAINT

COMES NOW, the Plaintiff, Kellie Watson ("Watson" or "Plaintiff"), and files this Complaint for damages against the Defendant, Rolling Frito-Lay Sales, L.P. ("Frito-Lay" or "Defendant") to be answered pursuant to the Federal Rules of Civil Procedure herein.

**I.      JURISDICTION**

1. This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This is a suit authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

3. This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

4. This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

5. This suit is authorized and instituted under the FMLA.

## II. ADMINISTRATIVE PREREQUISITES

6. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).

7. The plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

8. There are no statutory prerequisites to claims made under 42 U.S.C. 1981 and the claims are made within the four (4) year statutory period.

## III. PARTIES

9. Plaintiff, Kellie Watson, ("Plaintiff" or "Watson") is a resident of Spanish Fort, Baldwin County, and performed work for the Defendant in the counties composing the Southern District of Alabama, Mobile Division during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Division.

10. Defendant Frito-Lay is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama.

11. Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

12. For the 12 months preceding October 30, 2023, Plaintiff worked 1250 hours.

## IV. FACTS

13. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

14. Watson is African American.

15. Watson is also disabled as she suffers from epilepsy.

16. Watson was diagnosed with epilepsy in 2012.

17. Epilepsy is a brain condition that causes recurring seizures.

18. Because epilepsy is caused by certain activity in the brain, seizures can affect any brain process.

19. Seizure symptoms include temporary confusion, staring spells, stiff muscles, uncomfortable jerking movements of the arms and legs, and loss of consciousness.

20. Watson's daily life activities are affected by epilepsy as stated in paragraphs 16-17 above.

21. Watson applied to work for Frito-Lay, which is a division of Pepsico in July 2022.

22. When Watson applied, she notified the in-house Pepsico recruiter she had epilepsy to explain the gap in work.

23. Watson requested part– time work to accommodate this disability.

24. On or about July 27, 2022, Watson started working at Frito Lay making $17.00 per hour part-time for 20 hours a week.

25. Watson worked as a detailer.

26. Watson's job duties were to travel from store-to-store restocking shelves to make sure there were not items that were out of date.

27. If items were out of date, Watson would pull the item and replace it with items that had not expired.

28. Watson's route included Daphne, Spanish Fort, Montrose and Fairhope.

29. After Watson trained, the Point Clear store was added to her route.

30. On or about April 7, 2023, Watson was injured at the Point Clear Publix store.

31. The cart was overstocked and when Watson pushed it items fell on her right hand causing it to swell.

32. Watson reported this to the manager who got ice for her, then she reported it to her supervisor.

33. Prior to this injury, Watson had no problems with work.

34. Watson was able to come in early and clock out early, as soon as she worked her 6-hour shift, without issue.

35. Due to her injury, Watson was unable to properly use her right hand.

36. Watson was unable to lift.

37. Watson was transitioned to the Warehouse where she was given no duties.

38. Watson was required to sit in the Warehouse for my shift and do nothing all day.

39. On or about May 5, 2023, Watson was written up for leaving early.

40. Watson explained to her supervisor that she left when the last truck driver left as sitting by herself was unsafe due to her epilepsy.

41. Watson explained she cannot be by herself in case she had a seizure.

42. Watson needed someone to be around to help or seek help for her.

43. Watson asked for accommodation to change her hours sitting in the warehouse to coincide with the last truck driver leaving.

44. This angered Watson's manager.

45. Watson submitted an ADA request to the Employee Relations team on May 5, 2023, to adjust her hours so that there would be someone at the facility during her shift.

46. HR was not notified by the Employee Relations team of Watson's request for reasonable accommodation until May 8, 2023

47. On May 25, 2023, Watson's medical provider provided documentation that she always needed another individual working with her due to her seizure disorder.

48. On or about June 5, 2023, Watson's request for reasonable accommodation was denied.

49. Watson then received a letter from the Foley warehouse to go sit in the Mobile Warehouse.

50. Watson sat in the Mobile Warehouse from July 7, 2023, to September 2023.

51. Watson was there by herself most of the time from 5-8 p.m.

52. The latest truck left between 6:30 and 6:45 p.m.

53. On or about August 18, 2023, Watson learned they allowed other workers stationed in the warehouse, who were only temporarily injured and did not suffer from epilepsy, to alter their schedules to accommodate their family obligations.

54. Watson again requested from PepsiCo a change in schedule, and this request was also denied.

55. On or about October 30, 2023, Watson had an epileptic seizure, so she was unable to call or show up.

56. Watson explained she had a seizure and was unable to call or show to her supervisor, Dalton Burkhart, and he told her the seizure had nothing to do with her disability and that she should have called in.

57. On or about November 3, 2023, Watson was given a "last chance agreement", dated November 1, 2023, wherein it was alleged she had submitted inaccurate timecards, which was false.

58. Watson never submitted inaccurate timecards.

59. One of the dates they said Watson submitted an inaccurate timecard was Wednesday, September 20, 2023.

60. Watson was not scheduled to work at all on that date.

61. There were other inconsistencies on the last chance agreement.

62. The reasons for the last chance agreement were made up.

63. Watson complained to HR that the last chance agreement was retaliation for alerting her supervisor her absence was related to her disability.

64. HR claimed they knew nothing about Watson's disability.

65. On or about November 6, 2023, Watson discovered there was a company picnic on November 2, 2023, that she was not invited to.

66. Watson asked around and learned two other African American employees, Bryce and Jasmine, were not invited as well.

67. Watson sent an email to HR and management, Amber Smith, Jeff Davis, Dalton Burkhart, and Demetrius Roland about the picnic and how she felt she was being retaliated against due to her request for accommodations for her disability and discriminated against due to her race.

68. In October and November, Watson was not paid mileage for her travel.

69. On or about November 6, 2023, Watson spoke with Demetrius Roland on the phone and lodged the same discrimination and retaliation complaints listed above.

70. He told Watson these were serious allegations and asked her why she was making them.

71. Watson asked him about the picnic, and he claimed he thought everyone was invited.

72. Watson explained that she and two other African American employees were not invited among making the other complaints.

73. On or about November 7, 2023, Watson was not scheduled to work.

74. On or about November 8, 2023, Watson was called and told she was suspended without pay due to a violation of the "last chance agreement".

75. Again, the "last chance agreement" was based on false information.

76. Watson asked what violations were and no one told her what her alleged violations were.

77. It was only supposed to be 3 days, but Watson was told it would be however long they needed to conduct an investigation.

78. Watson explained to Defendant her absences were a result of her disability.

79. Watson was then told now we need an ADA for you, and she was asked to fill out the paperwork.

80. They told Watson they had no record of her being suspended and to let local deal with it.

81. On or about November 9, 2023, Watson went to the doctor.

82. The Doctor told Watson the ADA paperwork was already filled out back when she was injured at work, and that they are only trying to get her to fill out new paperwork to cover themselves.

83. While Watson was at the doctor, on or about December 8, 2023, she received an email letting her know she was terminated for violating the "last chance agreement" dated November 1, 2023 that she received on or about November 3, 2023.

84. The stated reason for her termination is that she violated her last chance agreement by being absent on October 30, 2023.

## V. CLAIMS

### COUNT I- ADA FAILURE TO ACCOMMODATE

85. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

86. Plaintiff suffers from epilepsy which is a brain condition that causes recurring seizures, effects the brain process, causes temporary confusion, staring spells, stiff muscles and uncomfortable jerking movements of the arms and legs, and loss of consciousness which are all daily life activities.

87. Plaintiff required the reasonable accommodation of working with another person so that she is not alone while she works in case she needed assistance.

88. Plaintiff requested that Defendant provide a reasonable accommodation.

89. Plaintiff was able to perform the essential functions of their job with without accommodation for their disability.

90. Plaintiff's request was not an undue burden as she normally worked with another person and was only assigned to sit alone after her request for accommodations, and due to the fact other employees had their schedules amended to coincide with their family schedules.

91. The Defendant failed to engage in the interactive process required by the Americans with Disabilities Act even though Plaintiff was able to perform the essential functions of their job.

92. As a result of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT II -ADA DISCRIMINATION – TERMINATION

93. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

94. Plaintiff suffers from epilepsy which is a brain condition that causes recurring seizures, effects the brain process, causes temporary confusion, staring spells, stiff muscles and uncomfortable jerking movements of the arms and legs, and loss of consciousness which are all daily life activities that are effected.

95. The Defendant knew Plaintiff's disability.

96. Plaintiff was able to perform the essential functions of their job with or without accommodation for their disability.

97. At all times relevant to this complaint, Plaintiff performed the essential functions of their job duties as in a satisfactory or better manner.

98. On December 8, 2023, Defendant terminated Plaintiff's employment, citing her October 30, 2023 absence as being a violation of her "last chance agreement" dated November 1, 2023, but given to her on November 3, 2023.

99. Clearly, Plaintiff could not violate an "agreement" she had not yet received.

100. The Plaintiff's October 30, 2023, absence was due to an epileptic seizure-her disability.

101. Because Plaintiff was fired for having an epileptic seizure and missing work the Defendant violated the ADA.

102. But for Plaintiff's disability, Defendant would have retained Plaintiff.

103. Defendant violated the ADA by terminating the Plaintiff's employment because of their disability.

104. Because of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

### COUNT III– ADA –- RETALIATION

105. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

106. Plaintiff was qualified for their position and able to perform the essential functions of the job.

107. Plaintiff engaged in protected activity each time she requested an accommodation for her disability and when she complained she thought she was being discriminated against because of her disability.

108. On or about December 8, 2023, Defendant terminated Plaintiff's employment.

109. The termination occurred within close temporal proximity to her complaint.

110. But for Plaintiff's protected activity, Defendant would have retained Plaintiff.

111. Defendant violated the ADA by terminating Plaintiff for engaging in protected activity.

112. Because of Defendant's violation of the ADA, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT IV- TITLE VII RETALIATION

113. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

114. On or about November 6, 2023, Plaintiff engaged in protected activity, when she reported discrimination based on race to HR.

115. On or about December 8, 2023, the Defendant terminated Plaintiff's employment.

116. But for Plaintiff's protected activity, Defendant would have retained Plaintiff.

117. The stated reason for termination was pretext because she could not have violated an agreement on October 30, 2023, that was not prepared until November 1, 2023, and given to her on November 3, 2023.

118. The stated reason for termination was because she had an epileptic seizure and could not come to work- which is not a legitimate non-discriminatory reason.

119. Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

120. Because of Defendant's violation of Title VII, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

### COUNT V- 42 U. S. C. § 1981 RETALIATION

121. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

122. On or about November 6, 2023, Plaintiff engaged in protected activity, when she reported discrimination based on race to HR.

123. On or about December 8, 2023, the Defendant terminated Plaintiff's employment.

124. But for Plaintiff's protected activity, Defendant would have retained Plaintiff.

125. The stated reason for termination was pretext because she could not have violated an agreement on October 30, 2023, that was not prepared until November 1, 2023, and given to her on November 3, 2023.

126. The stated reason for termination was because she had an epileptic seizure and could not come to work- which is not a legitimate non-discriminatory reason.

127. Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

128. Because of Defendant's violation of Title VII, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT VI- FMLA INTERFERENCE

129. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

130. During the 12-month period before October 30, 2023, Defendant employed Plaintiff for at least 1,250 hours of service.

131. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks within 75 miles of the location where the Plaintiff worked in the current or preceding calendar year of October 30, 2023.

132. Plaintiff provided notice of unforeseeable FMLA leave to her supervisor as soon as possible after having her epileptic seizure.

133. Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

134. Defendant failed to provide Plaintiff with an FMLA Designation Notice form.

135. Defendant failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form OR FMLA Certification of Health Care Provider for Family Member's Serious Health Condition form.

136. Defendant interfered with Plaintiff's FMLA rights by not allowing theirs to commence leave.

137. On December 8, 2023, Defendant terminated Plaintiff's employment citing her absence on October 30, 2023, violated a last chance agreement dated November 1, 2023, that she did not receive until November 3, 2023.

138. Defendant's employees knew that Plaintiff suffered from FMLA qualifying conditions for which she needed treatment through theirs doctor.

139. Because of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## COUNT  VII-FMLA RETALIATION

140. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

141. During the 12-month period before October 30, 2023, Defendant employed Plaintiff for at least 1,250 hours of service.

142. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks within 75 miles of the location where plaintiff worked in the current or preceding calendar year before October 30, 2023.

143. Plaintiff provided notice of unforeseeable FMLA leave to her supervisor as soon as she could after having her epileptic seizure.

144. Defendant willfully failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

145. Defendant willfully failed to provide Plaintiff with an FMLA Designation Notice form.

146. Defendant willfully failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

147. In fact, Plaintiff's supervisor told her that her seizure had nothing to do with her disability.

148. On December 8, 2023, Defendant terminated Plaintiff's employment citing her absence on October 30, 2023, violated a last chance agreement dated November 1, 2023, that she did not receive until November 3, 2023.

149. The defendant's employees knew that Plaintiff suffered from FMLA qualifying conditions for which she may have seizures because she provided them notice and requested accommodation for her epilepsy.

150. Defendant decided to terminate Plaintiff's employment because of Plaintiff's exercise of FMLA rights.

151. Because of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

VI. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at

the Defendant's request from continuing to violate the Americans with Disabilities Act;

  B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

  C. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981;

  D. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

  E. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

  F. Award back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

  G. Attorneys' fees and costs;

H.  Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

I.  Any different or additional relief as determined by the Court to which Plaintiff is entitled.

**JURY TRIAL DEMANDED**

*Patricia A. Gill* (signature)

Patricia A. Gill

**OF COUNSEL:**

The Workers' Firm
2 20th Street North, Suite 900
Birmingham, Alabama 35203
T: 205.329-6392
trish@theworkersfirm.com

**PLEASE SERVE DEFENDANT AS FOLLOWS**

Rolling Frito-Lay Sales, L.P.
Care of Registered Agent CT Corporation System
2 North Jackson St., Ste. 605
Montgomery, AL 36104